And will you call the next case please? 3-11-X-0-6-8-9, Elaine and Belshause appellant by Jerry Pepping v. Daniel Churchill, trustee of the Belshause family trust, affiliate of Jerry Pepping. Mr. Pepping? Thank you. Honorable justices, may it please the court, I'm Jerry Pepping, I represent Elaine Belshause, the plaintiff and appellant in this case. I want to start by talking about the fraudulent concealment issue. Fraudulent concealment exists as a matter of law here because the following well-pled facts are in the pleading. During the limitations period for filing a claim in this estate, plaintiff Elaine Belshause and defendant Daniel Churchill had an attorney-client relationship. It's alleged in paragraph 10 of our complaint that that relationship began at least as early as 2003 and that Mr. Churchill was her estate planning attorney even beyond the death of her husband on August 24th of 2008. Under the cases that have been cited by the defendant, there are some key distinguishing issues. First of all, one of the cases that we cited, Morgus v. Margulis, stands for the proposition that silence alone is sufficient to constitute fraudulent concealment where an attorney is representing a client because of the fiduciary relationship which exists and it creates a duty to speak. Most, if not all, of the cases that were cited, however, didn't involve that attorney-client relationship which is alleged here and which is admitted for purposes of this motion to dismiss. The second key thing here is we actually do have written evidence of an affirmative act of concealment which is alleged in paragraphs 30 and 59 of the complaint and that was that defendant Mr. Churchill stated in writing that he was not charging rent to Elaine because she was the income beneficiary. So clearly we have allegations here of fraudulent concealment that would avoid the six-month statute of limitations for an estate and of course this was filed within the two years. The next thing I want to focus on are the elements of attorney malpractice and these elements are discussed in the case of Keefe v. Wittek which we cite in our brief. They consist of, number one, there being an attorney-client relationship or in some cases the person being an intended beneficiary. Both of those things are alleged. Number two, a duty arising out of that relationship and the facts that we allege that gave rise to that duty are a specific direction by Marvin Bellhouse in the presence of his wife when both were joint estate planning clients of Mr. Churchill that under no circumstances did they want Elaine Bellhouse to have to pay rent to live in a residence following his death. So that basically is the client objective or goal that was not fulfilled in this case. The breach of that duty, when did that breach occur? Initially when they had the discussion they were living in a house that was in the living trust of Mr. Bellhouse and it had that prohibition written in there, you can't charge rent. But in the summer of 2008 some things changed in their lives. Marvin had pancreatic cancer, he had first been diagnosed in 2003 and things were getting worse and they came in for a checkup and they saw Mr. Churchill and they explained to him that they were moving things over from their Orian residence to go into this Milan residence that was in the family trust. And they at least on one occasion met with him in the summer of 2008 and told him of this change in their residence. So at that point in time he became aware of the fact that they were going to be living in Milan. And so we allege that in the complaint. As a result there was no recommendation of any amendment to the trust, there was no discussion of there being a problem after they relayed this change in facts to Mr. Churchill. After death no one knew that there was a problem until in 2010 when he decided he was going to charge rent which was directly contrary to what he had represented even after death in 2009. Was Mr. Churchill ever told that Marvin wanted a change in the trust? I don't know if he was told that he wanted a change in the trust. Marvin was not a very educated man. We didn't really get that far to the point where there were no depositions in this case, no testimony. They basically came in for a checkup and said this had changed in our lives. So we did not allege that they specifically directed him to make a change in that trust or read it over. So we did not allege that. So all you're alleging is that he was told that they were intending to move to the other house. Right. That was not included in the living trust. That is correct. And that house was in the family trust. And at that time Marvin was his own trustee under both trusts. Doesn't your position rely on making a lot of assumptions? Well, the key thing that we're relying on is that when clients come in to see an attorney to be their estate planning attorney, it's not like the movie Groundhog Day where you start over every time you meet with the people and reestablish who you are and what your goals are. The attorney should make notes. They should know what the objectives are. And when you come in for a follow-up, you look at what's changed and then circle back, look at the objectives, and see if those objectives are still being met. In this case, the lower court judge, I think, made a critical error and concluded that Attorney Churchill had forgot the direction that was given to him in 2003 and then took the further step that that forgetfulness was justified in this case. And here we have to take all well-pleaded facts and then any reasonable inferences from those facts should be construed in the favor of the plaintiff, the non-moving party. In essence, we're here on a pleading. It's not affirmative defenses or factual issues. Maybe there will become a factual issue on that, but for purposes of this motion, there shouldn't be. All well-pleaded facts are admitted and any reasonable inferences from those facts. And so here, the decision that he forgot is absolutely turning that law on its head. It's taking the inferences in favor of the defendant. We have to presume for purposes of this motion, he knew in 2008 that their objective, as stated before, was still enforced that they did not want her to have to pay rent following his death. Maybe it was in bright orange letters on the front of the file. We have to presume all reasonable inferences in favor of the plaintiff here. Well, I would assume in a legal malpractice case, you'd have to probably bring an expert testimony to say what a lawyer's duties are with respect to his client in regard to, as you said, these follow-up visits and estate planning. That is our intention, and we intend to call experts if we are able to get that far and talk about how estate planning attorneys focus on what has changed, look at the old objectives, look at the documents when they're doing a checkup with a client. And we, of course, never were able to get that far. So I went through a couple examples in my reply brief that focused on that issue. Is it okay to ignore what was told to you before when you're going for a follow-up visit? And the first one of those examples I gave was a married couple coming in to an estate planning attorney indicating that they wanted to leave a third of their assets to the grandchildren living at the second death of the two of them back in 2003 at the first visit. And also at that 2003 visit, telling the estate planning attorney, we have one of our children has a stepchild that we do not like. We don't want him to get anything whatsoever. And the attorney drafts a document that basically just leaves it to grandchildren, tells them a stepchild is not a grandchild. You're okay. Then they come in for a checkup later, and they say, hey, our son adopted that stepchild. Does that change anything? Are we still good? That's the only fact that's changed since we met before, and he fails to ascertain that objective, fails to circle back, do the diligence. So I think most people would consider that the attorney's job of trying to carry out the intention of the decedent was breached here, and maybe not when the original document was drafted. Maybe it accurately at that time reflected the intention, but in light of facts that came to the knowledge of the attorney later, did not. So that's one example. The other example I gave was one involving a tax issue where, in my hypothetical, in 2004, a client goes in and wants to leave assets to grandchildren and says, I don't want to pay generation skipping tax. They pick out a dollar amount that will be okay, but then the law in 2013 is changed, and they come back to the attorney and ask the attorney, you know, does that impact our plan, and the attorney doesn't diagnose and solve the problem. So I think we need to get to that point where we can call expert witnesses and determine if the attorney violated the standard of care. But for purposes of this appeal, we're looking at the pleadings alone. Do the pleadings have allegations that under the facts most favorably developed under those, inferred in favor of the plaintiff, could support a case of malpractice? Is there any chance at all that facts could be proven under these allegations that would show malpractice? And that's what the Supreme Court in Ogilvie-Futon looked at. Is there any chance at all that that could happen? So in this situation, we alleged in paragraphs 19 and 47 that Elaine was an intended beneficiary of Marvin. So even if it wasn't a joint client relationship like we alleged, if we got to trial and the court found out that she wasn't the client, that still there would be an intended beneficiary who did not receive what she was entitled to. But for purposes of this motion, we have to presume that the well-plaid facts are correct that she was a client at the time. This did result, as we alleged in paragraphs 23 and 51, in a family trust that did not match the client's intentions, and there were damages suffered as a result of that. The client incurred a lot of attorney fees, was evicted from her residence, and significant changes occurred in her life as a result. Mr. Pepping, I can't remember whether did any of your hypotheticals involve a situation like the one we have here where there are two separate trusts? No. Is there anything analogous to that? I don't think. In those simple hypotheticals I put together, I didn't put in two trusts. I didn't think that I remembered anything. Okay. Thank you. Thank you very much. Mr. Brooks. Please report. My name is Jack Brooks. I'm here on behalf of Mr. Churchill. The amended complaints filed by the plaintiff in the trial court have multiple pleading deficiencies. Every single motion that was filed listed these deficiencies in detail. The plaintiff was given three chances to amend his complaint to correct those very deficiencies we were pointing out each time he failed. There are two fatal deficiencies, and that's why we're here today. One fatal deficiency is that the court initially dismissed the first amended complaint because the claim was barred as pled by the statute of limitations. And the court allowed Mr. Pepping an opportunity to try to plead something that would excuse the statute of limitations, and they failed on that also. They attempted to allege fraudulent concealment, and the allegations of fraudulent concealment, especially detrimental reliance by the plaintiff, aren't there. They are just not there. There's no allegation that the plaintiff didn't know what the terms of that trust was at the time it was drawn in 2003, at the time of Marvin's death in 2008, or thereafter. There's no allegation that something that Mr. Churchill did concealed what the terms of those trusts were. There is absolutely nothing that would constitute detrimental reliance or fraudulent concealment. Well, what about after Mr. Bell's house, I guess, passes, that the letter to her saying, you're not going to charge you any rent, and would maybe dissuade her from going and actually looking at the trust document? Well, to me, it depends how you look at it. To me, it looks like saying, I can charge rent, but I'm not going to. He didn't say, I cannot charge you rent under the terms of the trust. He says, under the circumstances, since you're an income beneficiary, I'm not going to charge rent. That's what the letter said. Well, I mean, could a reasonable person conclude that that letter was calculated to and did cause somebody to quit looking, to sit back and think everything's okay until after the six months passes? I believe it's the plaintiff's obligation to allege those matters, Your Honor. They're not alleged. I mean, what's prohibiting them from alleging them? I don't know. They didn't allege that the plaintiff didn't know what was in that trust, what the terms were. They didn't allege that something Dan did, Mr. Churchill did, caused her not to look at the trust. There's no such allegations like that. Moving on, the other fatal flaw is that they do not allege sufficient facts to create a duty. They do not allege that the trust prepared by the defendant, Mr. Churchill, for Marvin in 2003, failed to incorporate Marvin's intentions at that time. They don't say that he committed malpractice because he incorrectly drafted the trust in 2003. They don't allege that at some specific time frame before Marvin's death, Marvin or the plaintiff either sought advice from Mr. Churchill about what a move would do or asked him to make an amendment or do something different. There is no allegation. What about the allegation that, whether it's fact or not, I don't know, but the allegation is, look, I went with my husband to the lawyer and he said, I don't want my spouse here upon my death to ever have to pay any rent. I believe, Your Honor, that that, the allegation is that that occurred in 2003. And they were living, and so then, and they're living in a house that he amends the trust or that particular trust so that that's taken care of. And then they allege that he comes back and says, by the way, we're moving to this other house. And there's no allegation. He said, do we need to change anything? There's no allegation they sought his advice or asked if anything else had to be done. There's some obligation on the client. There is no allegation that the 2003 trust were improperly prepared by Mr. Churchill. But if, hypothetically, a finder of fact finds that he made it clear that he didn't want his wife to pay rent upon his death, and then they say, well, now we're moving to this house, is it incumbent upon the lawyer to spot the issue as opposed to the client and say, hey, by the way, if you move into that house, unless you want me to change it, it's going to change the... The only allegation is that they met with Mr. Churchill in the summer of 2008. And for estate planning matters, unspecified estate planning matters. And they never allege, and in fact, I think counsel in oral argument before the trial court said he's unable to allege that they requested anything to be done in 2008. But he did, though, allege, did he not, that they advised the lawyer that they were moving from house A to house B, house B being in the different trucks? That's what they allege. With that allegation, put the lawyer on note of duty to say, hey, if you do that, that's going to change things. I think that depends upon the allegations of the complaint, Your Honor. And if they asked Mr. Churchill, hey, do I have to do something different? Then that might be a different ballgame. But they don't allege it, and counsel said they can't. Is there true? But could somebody conclude that a lawyer might have a duty to tell them? In other words, the lawyer spot the issue as opposed to the client? I don't know, Your Honor. I mean, that's five years before. Mr. Churchill drafted the trust the way the client wanted. The client signed it. The client had it. The client knew what's in it. So is a lawyer obligated to remember five years ago what they did for a given client? Well, maybe, maybe not. But would a lawyer be, and I suppose this would be, I don't know the answer to these questions, but I suspect experts might come in and disagree about them. But if I'm coming in to my estate planning lawyer five years after he's done something for me, is it incumbent upon him to at least review what's gone before so he knows where the status quo was so if I say now I want to do this, he can say, you know, every day's not a new day. In other words, should he refresh his recollection about what this client's goals in life are? Again, it depends on what they allege the client requested. Would it be proper for an attorney under those circumstances to say, hmm, I wonder if there's something in those documents from five years ago that I should check out and bill the client for ten hours of reviewing the file when they didn't ask for it? I think he'd be in trouble if he did that. The client didn't ask. It's up to the plaintiff to allege sufficient facts to create the duty. And this is where the complaint fails here. They do not allege enough facts to impose a duty on Mr. Churchill to do something about those trusts. When they didn't ask, they didn't request, and counsel for the plaintiff admits that in 2008 they probably didn't. So the inference the plaintiff is asking to draw at this point in time, there are inferences drawn from conclusory allegations. The law is that you cannot draw inferences from conclusory allegations. They have to be drawn from the well-pleaded facts. And that's where that's another deficiency pleading of all of these amended complaints. So your position would be that just saying we're moving in 2008 is not enough as a matter of law to even get you to the dance? You've got to say, hey, we're moving. Do we need to change anything? I would say so, yes. If they allege that, would that change things in your matter? When we ask them, say, we're moving from House A to House B, does that require us to change anything in our trust? They need to allege that, and they can't. No, if they had. But had they? Had they alleged that, then, yes, I think there would be sufficient allegations that would create a duty. In other words, a client is making a request upon a lawyer to check something out, and the lawyer accepts that request. That's what creates the duty for the lawyer. You don't think just telling them they're moving creates a duty as an estate planning lawyer? I mean, do you think they're just telling them that because we're going to send the bill? If they say it in a vacuum, then I don't think that's sufficient to create it. I mean, I can think of thousands of times that I've done wills for clients, and, for example, they want to disinherit somebody, and 10 years later they come to me and say, oh, you know, Tom changed his mind, and he's doing good now. You don't ask me to change the will? I'm not going to ask you whether you want me to change the will because I probably am not going to remember it. That's the burden that what the plaintiff wants to do places on the lawyer. It's an impossible burden. Without the request, and even if they request it, the lawyer is free to say, no, I'm not going to look at it, go get another lawyer. That's the request, and the acceptance is what creates the duty on the lawyer. Thank you. Mr. Brooks, there are two trusts here. Is there any need for the plaintiff to allege that Marvin had the same intent, the same goals with regard to both of those trusts? I think they tried to do that when they said that Marvin told Mr. Churchill that he doesn't want his wife to pay any rent. I think that's what he was trying to plead. It's poorly pled, but they were trying to do it. But then why don't they allege that the trusts were prepared wrong in 2003? Because they weren't prepared wrong. And these are two different trusts with slightly different goals. Two different trusts. One was Marvin's trust, and the other one was Marvin's family trust, which dealt with Marvin's family's property, which he inherited, and that goes to the kids. And Mrs. was the income beneficiary of that. For the Marvin trust, the plaintiff inherited all the property in that trust, so she's the owner of that residence and all that other property. So she got that house out right. Is there any other questions? No, sir. Thank you very much. Thank you, Mr. Brooks. Mr. Pepping, some rebuttal? The first point I want to provide rebuttal on is the comment that the plaintiffs don't allege that they didn't know the meaning of the trust on the rent issue and that they should have been able to figure out what the import of the drafting of these two trusts meant as far as the ability to charge rent. That would be an extremely difficult standard and burden to put on ordinary lay people, where we've had four judges look at the issue of whether or not rent could be charged by Mr. Churchill under the family trust in this very situation, in the eviction case. Two of those judges said that he could charge rent or evict her. Two judges said that he couldn't. First, the lower court judge found in our favor in the eviction case that he could not charge rent and evict her from the property. And then there was a two-to-one decision of this court, two justices finding that he had the power as trustee to do that and one not. So if four members of the judiciary can't all agree on it, how is it that these ordinary lay people are able to do that? When we get to trial, we're going to show his educational background and all those things, but I don't think that we ought to have to be smarter than all the lawyers to have the clients have that burden. Second thing is we did allege in paragraph 17 of the complaint that when they met with Mr. Churchill in the summer of 2008, they were seeking his advice regarding their mutual estate planning goals and told him of what had changed. So did they tell him, hey, here is this trust and here's this trust and this one has this language but this doesn't? No, I don't think we can allege that. I also stated in an oral argument on the motion that I couldn't allege that Marvin repeated himself in 2008 and said again, I don't want her to be charged any rent no matter what. But he did say it in 2003. It was understood and for purposes of this motion, we have to assume he remembered it. Again, we have this argument, well, he forgot and that should be okay. We haven't got that far yet. We have to take all inferences in favor of the plaintiff on this one. So this categorical prohibition on rent, that goal was not changed at any time by Mr. Bellhouse. In terms of the standard or duty that he would have, he didn't have to do a lot of legal research or anything like that. He just needed a very limited review. Here's what's changed. Okay, they told me they're changing residences. Is there anything that's specific to a residence in here? He probably could find it a little faster than they could looking through the documents since he drafted them. He could check his notes from before. Did he do any of those things? We will only know if this case is reversed, and hopefully it will be, and we can find out who really is entitled to judgment in this case. But they did ask him to comment on those issues at the time, and it's quite possible for him to do that review right there while they're sitting there. Or he could say, you know what, I want to take some time to review this and get back in touch with you. Now, some of the other cases don't have those allegations. So, for example, the Rutkowski case that was cited, that basically was more on the issue of fraudulent concealment. But, you know, in that case, they didn't allege that the party had an attorney-client relationship or sought advice. Here we did. So we said that they meant to seek advice on their mutual estate planning concerns. Thank you very much. Thank you, Mr. Peffing and Mr. Brooks. Thank you both for your arguments here this morning. The matter will be taken under advisement. A written disposition will be issued. And right now, the court will be in brief recess for a panel change before the next hearing.